| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL VII | | |
| ALFREDO ROLÓN NARVÁEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN y REHABILITACIÓN<br><br>Recurrido | KLRA202500183 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Corrección y Rehabilitación<br><br>Instituto Educativo Correccional<br><br>Sobre:<br>Evaluación Programa de Pre-Reinserción |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 30 de mayo de 2025.

El recurrente Alfredo Rolón Narváez presentó un recurso intitulado *Moción en Solicitud de Revisión Judicial* con fecha del 19 de marzo de 2025*.* En este escrito, presentado por derecho propio, solicitó revisemos la decisión de *Evaluación Programa de Pre-Reinserción* del Departamento de Corrección y Rehabilitación, emitida el 10 de enero de 2025, notificada el 18 de febrero de 2025. En esta decisión se determinó que no era favorable la participación del recurrente al programa de reinserción.

El Departamento de Corrección y Rehabilitación presentó su posición al recurso e incluyó copia de los documentos que forman el expediente administrativo.

Con el beneficio de ambos escritos, resolvemos *Confirmar* la determinación recurrida.

Número Identificador

SEN2025_____

**I.**

Alfredo Rolón Narváez (Rolón Narváez o recurrente) se encuentra bajo la custodia del Departamento de Corrección y Rehabilitación. En su escrito, nos informó que, el 16 de abril de 2024, compareció ante el Comité de Clasificación y Tratamiento de la Institución en la que se encuentra ubicado para ser referido al Programa de Pre-Reinserción a la Libre Comunidad, Programa REDES[1] en Arecibo, Puerto Rico.

Surge del expediente que el 25 de junio de 2024, el aludido Programa de Pre-Reinserción emitió un referido para que la oficina local realizara el informe de investigación de Rolón Narváez. Este informe requería corroborar la disponibilidad del plan de salida, del recurso familiar y la **parte perjudicada**.[2] Como parte del proceso de evaluación, se sometió para investigación el plan de salida con el recurso familiar del candidato al programa de pre-reinserción.[3]

Más adelante, el 18 de septiembre de 2024, la Secretaria Auxiliar, pospuso la decisión, porque refirió el caso para la evaluación adicional. Esto, a los fines de cumplir con las disposiciones del Plan de Reorganización atinente a los derechos de las víctimas de los delitos por los cuales el recurrente extingue, entre ellos, el asesinato en primer grado.[4] Así pues, de la investigación trascendió que una de las víctimas se opuso a que el recurrente disfrutara del privilegio solicitado y explicó las razones que tenía para ello.[5]

---

[1] Proyecto de Recogido de Desperdicios Sólidos.
[2] Escrito en cumplimiento de resolución y solicitud de desestimación, apéndice, pág. 8.
[3] Íd, pág. 9.
[4] Íd, págs. 11 y 35.
[5] Íd, págs. 22, 25, 30, 39, 41.

Así, las cosas, el 10 de enero de 2025, archivada en autos copia de su notificación el 18 de febrero de 2025, el Departamento de Corrección determinó denegar la solicitud del recurrente para ser enviado al programa. Allí, la Secretaría Auxiliar Programas y Servicios Nivel Central clasificó el caso de Colón Narváez como no favorable. La explicación para la denegatoria de participar del programa lee como sigue:

> Razones: Se deberá observar los ajustes del MPC por un (1) año adicional. Contactar y entrevistar una víctima que no pudo localizarse.

En desacuerdo, el recurrente presentó el presente recurso de revisión, en el que alegó lo siguiente:

> Erró el DCR al denegar el traslado del Recurrente al Programa REDES en Arecibo solamente basándose en que tiene que permanecer un (1) año adicional para observar ajustes.

> Erró el DCR al denegar el traslado del Recurrente al Programa REDES en Arecibo por no haber podido contactar y entrevistar a una víctima que no pudo ser localizada.

Tras varios trámites procesales, el Departamento de Corrección compareció, representado por la Oficina del Procurador General. Mediante el *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación,* junto al escrito, sometió copia del expediente administrativo. El Departamento alegó que no poseíamos jurisdicción para evaluar el recurso porque este no contenía los aranceles de presentación ni el recurrente solicitó litigar *in forma pauperis*. En la alternativa, adujo que procedía confirmar la decisión recurrida.

Cuestionada nuestra jurisdicción, determinamos que, aun cuando el recurrente no incluyó la declaración para litigar como indigente, procede aceptar su comparecencia por su condición de confinado.

Aclarado lo anterior, tras evaluar el recurso, determinamos *confirmar* la decisión del Departamento de Corrección.

## II.

## A.

La Constitución de Puerto Rico establece la política pública de "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. PR, LPRA, Tomo 1; Lebrón Laureano v. Depto. Corrección, 209 DPR 489, 498-499 (2022); Cruz v. Administración, 164 DPR 341, 351 (2005).

El Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Plan de Reorganización Núm. 2-2011 (3 LPRA Ap. XVIII) (Plan de Reorganización), hace valer esta política pública. Íd. Mediante el referido Plan de Reorganización se declaró como política pública del Gobierno de Puerto Rico, "la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad." Artículo 2 del Plan de Reorganización, 3 LPRA Ap. XVIII.

Asimismo, se invistió al Departamento de Corrección con la facultad de efectuar la clasificación adecuada y revisión continua de la clientela, conforme a los ajustes y cambios de ésta. Véase el Artículo 5, Plan de Reorganización, *supra*.

Como parte de los programas disponibles a la clientela, se estableció la creación del Proyecto de Recogido de Desperdicios Sólidos (REDES). Ello, "con el fin de asistir a los municipios en la recolección de los desperdicios de sus ciudadanos, mientras promueve la reinserción de aquellos sentenciados con buena conducta para que contribuyan a la sociedad." A esos fines, se facultó "al Secretario para escoger a aquellos miembros de la población sentenciada que hayan presentado buena conducta y no hayan cometido delitos graves que conlleven depravación moral o agresiones sexuales para que trabajen y colaboren en el programa de recogido, acarreo y disposición de los desperdicios sólidos." Artículo 41, Plan de Reorganización, *supra*.

Para ejercer sus deberes se le confirió al ente administrativo, la facultad de, "adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios". Artículo 7 (aa), Plan de Reorganización, *supra*.

De otro lado, a través de la Orden Administrativa DCR-2023-03 (Orden Administrativa DCR-2023-03), efectiva el 7 de septiembre de 2023, el Departamento de Corrección adoptó el *Proyecto para la Pre Reinserción a la Libre Comunidad*. Dicta la Orden Administrativa que, "el sistema correccional de nuestro país ostenta un propósito dual. Por un lado, debe proteger a la sociedad de la actividad delictiva y contribuir de esa forma a la seguridad pública; y por otro lado, proveer a la población correccional mecanismos disuasivos apropiados que provoquen su

rehabilitación." Orden Administrativa DCR-2023-03, I. Introducción.

La Sección IV (C) (1-5), de la referida Orden Administrativa provee el procedimiento interno administrativo para la concesión de la Participación en el Proyecto Pre Reinserción a la Libre Comunidad.

Asimismo, la Orden Administrativa, en la Sección IV (A), dispone que el Secretario del Departamento de Corrección, podrá conceder el privilegio de participar en el Proyecto de Pre Reinserción a la Libre Comunidad, sujeto a los siguientes criterios de elegibilidad:

1. No tener resoluciones administrativas disciplinarias en su contra durante los últimos seis (6) meses. Tampoco puede tener procesos disciplinarios pendientes de resolver.

2. Estar clasificados en custodia mediana o mínima.

3. No tener pendiente procesos criminales ante los tribunales.

4. Podrá estar disfrutando de pases familiares sin custodia.

5. Haber satisfecho la Pena Especial impuesta o poseer un plan de pago, conforme a la Ley Núm. 183-1998, según enmendada, conocida como "Ley de Compensación a las Víctimas de Delito".

6. Debe estar en cumplimiento con lo dispuesto en las siguientes leyes:

   a) Ley Núm. 175-1998, según enmendada, conocida como "Ley del Banco de Datos de ADN de Puerto Rico".

   b) Ley Núm. 243-2011, según enmendada, "Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores".

7. Deberá restarle diez (10) años o menos para cumplir el mínimo de la sentencia.

8. Debe estar cumpliendo con el Plan Institucional asignado favorablemente y presentar buenos ajustes institucionales. Esto debe estar certificado por el Técnico de Servicios Sociopenales y contar con el visto bueno del supervisor.

9. En los casos de los miembros de la población correccional que tengan historial de uso de sustancias controladas o alcohol, deberán haberse beneficiado de tratamiento contra la adicción.

10. En los casos de los miembros de la población correccional convictos por infracción a la Ley Núm. 54 del 15 de agosto de 1989, conocida como la "Ley para la Prevención e Intervención con la Violencia Doméstica" o de algún delito de naturaleza sexual, previo a ser considerados para participar del Proyecto, deberán haberse beneficiado del programa Aprendiendo a Vivir Sin Violencia y contar con la recomendación favorable del terapista/psicólogo.

11. En los casos en que el miembro de la población correccional haya incurrido en el delito de fuga o en la comisión de un nuevo delito, deberá haber transcurrido un mínimo de tres (3) años desde la fecha en que fue sentenciado. Además, tendrá que haber completado el tratamiento recomendado en su Plan Institucional.

12. En los casos en que el miembro de la población correccional haya incurrido en violación a las normas y condiciones de algún programa previo, podrá ser considerado solamente por una segunda ocasión adicional, luego de haber transcurrido un mínimo de dieciocho (18) meses desde el incumplimiento. Además, tendrá que haber completado el tratamiento recomendado en su Plan Institucional. No se considerará para participar del programa si incurrió en la comisión de un nuevo delito durante el disfrute del privilegio.

**13. No constituir un riesgo para su propia seguridad, la de sus compañeros, la comunidad y las víctimas o partes perjudicadas.**

[……..]

En cuanto a las víctimas de delito, el Artículo 17 del Plan de Reorganización Núm. 2-2011, *supra*, requiere la notificación inicial a la víctima del delito sobre el interés del miembro de la población correccional de beneficiarse del privilegio de participar de los programas de desvío y del derecho de la misma a ser escuchada.

La participación del confinado en el Programa de Reinserción a la Libre Comunidad es un privilegio, por lo que, podemos colegir que el disfrute de este descansa en la sana discreción del ente adjudicador. Véase, Pueblo v. Vélez Torres, 212 DPR 175, 182

(2023). De ordinario, los foros apelativos no intervendrán con el ejercicio de la discreción del foro revisado, salvo que se demuestre que hubo un craso abuso de esta. Ver Lluch v. España Service Sta., 117 DPR 729, 745 (1986).

**B.**

A su vez, la función revisora de este foro apelativo con respecto a las determinaciones del Departamento de Corrección, como de cualquier otra agencia, es de carácter limitado. Pérez López v. Depto. Corrección, 208 DPR 656, 674 (2022). Así pues, es norma de derecho claramente establecida que los tribunales apelativos, al momento de revisar las determinaciones administrativas, están obligados a conceder deferencia a las decisiones de las agencias en consideración a que estas poseen la experiencia y el conocimiento especializado sobre los asuntos que se les han delegado. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, 2025 TSPR 33, 215 DPR ___ (2025); Hernández Feliciano v. Mun. Quebradillas, 211 DPR 99, 114 (2023); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016); Pagán Santiago et al. v. ASR, 185 DPR 341, 358 (2012). Por lo anterior, también se ha reiterado que las determinaciones administrativas están revestidas de una presunción de legalidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra; OEG v. Martínez Giraud, 210 DPR 79, 89 (2022); Capó Cruz v. Junta de Planificación et al., 204 DPR 581, 591 (2020); Torres Rivera v. Policía de PR, supra; Trigo Margarida v. Junta Directores, 187 DPR 384, 393-394 (2012). El criterio rector al revisar una actuación de la agencia recurrida es la razonabilidad de la acción impugnada. Katiria's Café, Inc. v.

Municipio Autónomo de San Juan, *supra*; Torres Rivera v. Policía de PR, *supra*.

Asimismo, la Sección 4.5 de la Ley Núm. 38-2017, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9675, y nuestra jurisprudencia limita la revisión judicial a los siguientes tres aspectos: "(1) que el remedio concedido por la agencia fue el apropiado; (2) que la revisión de las determinaciones de hecho esté conforme al criterio de evidencia sustancial, y (3) determinar si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta". Katiria's Café, Inc. v. Municipio Autónomo de San Juan, *supra,* citando a Pagán Santiago et al. v. ASR, 185 DPR 341, 358 (2012).

En cuanto a las conclusiones de derecho, los tribunales apelativos tienen la facultad de revisarlas en todos sus aspectos. Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales, 2025 TSPR 56, 215 DPR ___ (2025); Otero Rivera v.USAA Fed. Savs. Bank*, 2024 TSPR 70, 214 DPR ____ (2024).* Así pues, la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. (Énfasis nuestro). Jusino Rodríguez v. Junta de Retiro, 2024 TSPR 138, 215 DPR __ (2024); Hernández Feliciano v. Mun. Quebradillas, *supra*; Torres Rivera v. Policía de PR, *supra*, pág. 628.

**III.**

El recurrente alega, en síntesis, que ha cumplido favorablemente con su plan institucional y a los ajustes establecidos por la agencia. En particular, indicó que cuenta con evidencia de salidas a la comunidad, que está matriculado en el curso de estudios de la Universidad de Puerto Rico y que se encuentra participando de todos los programas y oportunidades disponibles en la institución donde se encuentra. Señaló que no existe razón lógica para estar un año (1) más observando buenos ajustes institucionales. Además, señaló que el hecho de que el Departamento de Corrección no pudo contactar a una de las víctimas no es razón para perjudicarle, ya que, esa responsabilidad recae en la agencia. Señaló que la agencia tiene un protocolo para esos fines, a través de la Oficina de Notificación a Víctimas. Adujo que el Departamento de Corrección pudo posponer la decisión final hasta tanto contactara a la víctima que no se localizó.

El Departamento de Corrección, por su parte, alegó que una de las víctimas opinó que el recurrente representa un peligro para la sociedad, razón por la cual se opuso a que disfrutase del privilegio que solicitaba. Señaló, además, que los familiares del occiso residen en la misma demarcación municipal en la que están localizadas las instalaciones correccionales en Arecibo. El Departamento de Corrección afirmó que la opinión de la víctima entrevistada es pertinente a la evaluación de su plan de salida como parte del programa al cual solicitó. Ante ello, entendió razonable la determinación recurrida.

A la luz de la normativa aquí reseñada, los argumentos de las partes y el expediente administrativo, evaluamos.

El disfrute del privilegio de participación en el Proyecto de Pre Reinserción a la Libre Comunidad del Programa, debe ser evaluado a la luz de los requisitos que establece la sección IV (a) de la Orden Administrativa DCR-2023-03. Uno de estos criterios es, si el miembro de la población correccional cumplió con el Plan Institucional asignado favorablemente y presentar buenos ajustes institucionales. Otro criterio es el, "no constituir un riesgo para su propia seguridad, la de sus compañeros, la comunidad y las víctimas o partes perjudicadas." Orden Administrativa 2023-23, incisos 8 y 13.

De conformidad con lo anterior, el Gerente de Programas y Servicios Correccionales, luego de la correspondiente investigación, indicó que el caso del recurrente fue evaluado y se determinó que no era favorable para el programa de reinserción. Explicó que el recurrente deberá observar los ajustes como miembro de la población correccional por un (1) año más. También, manifestó que debía contactar una víctima que no pudo localizarse.

Las razones a la que aludió la agencia se encuentran dentro de los criterios que dicta la Orden Administrativa DCR 2023-03, *supra*. Si bien, el recurrente expresa que ha cumplido con los ajustes a su plan, este no es el único factor que se debe evaluar.

Es requisito, además, considerar la opinión de las víctimas o las partes perjudicadas. En este renglón, aunque el recurrente alega que el Departamento de Corrección tenía la obligación de localizar a las víctimas, ello de por sí no es suficiente para conceder su petitorio. Surge del expediente administrativo que, además del interés de localizar a otra víctima, una de las partes perjudicadas sí fue entrevistada. Esta parte se opuso a la concesión del privilegio y explicó las razones para ofrecer esa

opinión. Así que, en el expediente si existía prueba adicional que justificaba denegar la petición del recurrente hasta tanto se realice una próxima evaluación.

De manera que, la razonabilidad de la decisión recurrida encuentra apoyo en la evidencia sustancial que surge del expediente. Por esto, le concedemos deferencia a la determinación del Departamento de Corrección, pues esta resulta adecuada y razonable, a tenor con las postulados legales que rigen sus oficios y la información recopilada en el expediente. Por otro lado, el recurrente no nos demostró que la determinación recurrida fuese arbitraria, irrazonable, ilegal o carente de una base racional.

**IV.**

Por las razones antes expresadas, determinamos *confirmar* la determinación aquí recurrida.

Disponemos que el Secretario del Departamento de Corrección y Rehabilitación debe entregar copia de esta determinación al recurrente, en la institución correccional donde se encuentre recluido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones